## Morton v. Commonwealth.

(Decided May 27, 1914.)

### Appeal from Webster Circuit Court.

1. Larceny—Grand Larceny—When Taking of Property with Owner's Consent Constitutes the Crime.—If the owner of personal property parts with the possession for a particular purpose, and the person who receives the possession avowedly for that purpose has a fraudulent intention to make use of the possession as a means of converting the property to his own use, and does so convert it, it is larceny. But if the owner intends to part with the title to and possession of the property absolutely to one who receives it for the purpose of doing with it what he pleases, it is not larceny, although fraudulent means may have been used by the latter to induce the owner to part with it.

2. Larceny—Proceeds of Land—When the Conversion Thereof Will Constitute Grand Larceny.—Where one induces the owner of land to convey it to him solely for the purpose of constituting him her agent to sell it and at once deliver to her its proceeds, and after receiving the deed he sold and conveyed

the land to a third person and converted its proceeds to his own use, he was guilty of grand larceny, if the deed conveying him the land was obtained by his fraudulent procurement and with the felonious intent on his part to steal, take and carry away the proceeds of the land and he did, in fact, convert them to his own use.

DAVID BROWNING for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, John C. Morton, alias Wilson, was tried in the Webster Circuit Court under an indictment charging him with the crime of grand larceny and by verdict of a jury declared guilty. Judgment was duly entered upon the verdict fixing his punishment at confinement in the penitentiary not less than one nor more than five years. He complains of the judgment and in seeking its reversal, assigns as error: 1. The refusal of the trial court to peremptorily direct his acquittal by the jury; 2. The admission of incompetent evidence. 3. Failure to properly instruct the jury as to the law of the case.

The first ground of complaint rests upon the theory that the evidence failed to prove appellant guilty of the offense charged in the indictment; it being argued that if he was shown by the evidence to be guilty of an offense at all it was not grand larceny as charged, but that of obtaining money and property by false pretenses; and that there was such a variance between the allegations of the indictment and the facts proved, as authorized the peremptory instruction directing his acquittal, asked by him and refused by the trial court, at the conclusion of all the evidence. The allegations of the indictment, omitting what is immaterial, are that appellant did "wilfully, unlawfully and feloniously take, steal and carry away from the possession of Elizabeth Shelton $525.000 of good and lawful money of the United States of America, and one land note of $675.00 * * * the personal property of said Elizabeth Shelton and not the property of John C. Morton, alias Wilson, of greater value than $20.00, all done by the said John C. Morton, alias Wilson, with the felonious intent to convert same

to his own use and to permanently deprive the owner, Elizabeth Shelton, of same.''

The facts furnished by the bill of evidence are in brief as follows: About August 27, 1913, the appellant, hailing from the State of Tennessee and sometimes known as John C. Morton, at others as John C. Wilson, became acquainted with Miss Elizabeth Shelton of Webster county, this State, to whom he shortly thereafter proposed marriage. The proposal was accepted by her with the understanding that, following their marriage, she would reside with appellant upon a farm he claimed to own in Tennessee. Immediately after entering with Miss Shelton into the marriage engagement, appellant insisted that she sell a farm of 58 1-2 acres in Webster county owned by her, giving as a reason that after their marriage she could better manage the money that might be realized for the farm than the farm itself, and telling her that if she would by deed convey him the farm he could obtain for it $200.00 more than she could sell it for, and that he would at once sell it and turn over to her the proceeds. Relying upon this advice and appellant's assurance that he would sell the farm and at once deliver to her the proceeds, Miss Shelton by deed conveyed it to him, reciting therein a pretended consideration of $1,100.00 cash in hand, when, in fact, he paid her nothing for it and was not to do so; the sole purpose of the conveyance being to enable appellant to make a more advantageous sale of the land for her than she could make of it herself, and deliver to her the proceeds. The deed was prepared by appellant's procurement and acknowledged by Miss Shelton September 17, 1913; and on the next day, September 18, 1913, the land was sold by appellant to one Noah Shelton of Union county at the price of $1,200.00, to whom he at once by deed, duly acknowledged, conveyed it. Of the consideration, $525.00 was paid by the purchaser in cash and certain road claims against the fiscal court of Union county, the equivalent of cash. For the remainder of the consideration, $675.00 the purchaser executed to appellant as John C. Wilson his promissory note, payable six months after date, with interest from date, both principal and interest being secured by a vendor's lien retained by the deed on the land.

No part of the cash payment or road claims received by appellant on the land from Noah Shelton was paid

over or delivered by him to Elizabeth Shelton, nor did
he ever deliver to her the note of $675.00 executed to
him by Noah Shelton for the remainder of the consid-
eration agreed to be paid by the latter for the land. On
the contrary, immediately after obtaining the note from
Noah Shelton he repeatedly attempted to sell it at a
discount of $100.00, and his efforts to thus dispose of the
note continued until his arrest under a warrant for the
offense of which he was finally convicted under the in-
dictment.   The foregoing facts are undisputed, as no
evidence whatever was introduced in appellant's behalf,
and it remains to be determined whether they prove him
to be guilty of grand larceny.

It is manifest from the evidence that appellant ob-
tained of Miss Shelton the deed conveying him her land
with the felonious intent to steal and convert, not the
land, but its proceeds, to his own use. In order to accom-
plish this felony he first gained her confidence and ob-
tained her promise to become his wife, then induced her
to believe that she ought to sell the land and that he
could by selling it for her obtain a better price than
she could realize by negotiating its sale herself. To fur-
ther effectuate his purpose of stealing the proceeds of
the land he fraudulently represented to her that its con-
veyance to him was necessary; and when, as the osten-
sible owner of the land, he effected its sale, the cash,
road claims and note he received from the purchaser
therefor were by him withheld from Miss Shelton, the
owner, and converted to his own use, thus demonstrating
that it had been his purpose from the beginning to steal
from her what he realized for the land. The several
transactions by which this object was accomplished were
but parts of the trick or device by which she was de-
prived of the consideration received by appellant by the
sale of the land, and its conversion effected by him.

If one obtains possession of goods or money from the
owner or possessor by fraud with intent to steal it, the
taking is larceny, and is so held in every jurisdiction. If
the consent of the owner to the taking is obtained by
fraud, such consent will not prevent the taking from be-
ing larceny. In Elliott v. Commonwealth, 12 Bush, 176,
we held that:

"If the owner of goods parts with the possession for
a particular purpose, and the person who receives the
possession avowedly for that purpose has a fraudulent

intention to make use of the possession as a means of converting the goods to his own use, and does so convert them it is larceny. But if the owner intends to part with the property and delivers the possession absolutely and the purchaser receives the goods for the purpose of doing with them what he pleases, it is not larceny, although fraudulent means may have been used to induce him to part with them.'' Commonwealth v. Williamson, 96 Ky., 1; 1. Wharton's Criminal Law, section 886; Blackburn v. Commonwealth, 28 R., 96.

In Roberson's Criminal Law, vol. 1, page 564, it is said:

''If, therefore, the owner parts with the possession of his property for a particular purpose and the person who receives the possession avowedly for that purpose has a fraudulent intention to make use of the possession as a means of converting the property to his own use, and does so convert it, it is larceny.''

It is, however, insisted for appellant that in view of the facts here presented and the rule announced in Miller and Smith v. Commonwealth, 78 Ky., 15, quoted with approval in Commonwealth v. Shang, 131 Ky., 405, he cannot be held guilty of grand larceny. The rule in question is as follows:

''The rule as stated by Russell (2 Russell, 29) and approved by this court, is that if, by trick or artifice the owner is induced to part with the possession only, still meaning to retain the right of property, the taking by such means would amount to larceny; but, if the owner part with not only the possession of the goods, but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretenses.''

In other words it is appellant's contention that Miss Shelton, the owner of the land, which he sold and converted into money and a note, by its conveyance to him parted with the title thereto and to any right of property she may have had in the money and note for which he sold it, and that this act, by virtue of the rule last stated, made his offense that of obtaining property by false pretenses instead of grand larceny. This contention is unsound. The crime of grand larceny charged in the indictment did not arise out of appellant's conversion of the land, for real estate cannot be the subject of larceny, but out of his conversion of the money and note

he received for the land. In conveying appellant the land it was not the grantor's intention or his that the title thereto should pass to or vest in him absolutely, but that by means of the deed he should hold the title temporarily and for her benefit until such time as he could sell it and turn over to her the proceeds. By his fraudulent representation to Miss Shelton that by thus investing him with the title to the land for the purpose of selling it for a better price than she could receive therefor, he induced her to constitute him her agent to sell the land and immediately pay over to her the proceeds, and when upon selling the land and receiving therefor the proceeds, partly in money and partly in the land note, he converted both to his own use instead of delivering them to her, he committed the crime charged in the indictment, if, at the time of procuring the execution of the deed from Miss Shelton to him, he feloniously intended thereby to use the conveyance as a means of converting the proceeds of the land to his own use, following his sale and conveyance thereof.

According to the evidence, although appellant ostensibly held the title to and possession of the land for a day, it was as the agent of Miss Shelton and only for the purpose of selling it as such agent and delivering to her the proceeds, and this arrangement having been brought about by his fraudulent procurement and with the felonious intent on his part to steal, carry away and convert to his own use the money and note received by him for the land, he should not be allowed to escape the punishment that will result to him from the verdict of the jury and judgment of the trial court, upon the false and purely technical ground that he is guilty of a felony other than the one for which he was indicted and convicted. It is patent from the evidence that Miss Shelton never intended to part with her title to the land by conveying it absolutely to the appellant, and equally patent from the evidence that he was only temporarily invested with the title as her agent and for the purpose of selling it and delivering to her the proceeds. His possession of the money and note for which he sold the land was as her agent and for a particular purpose; and they being her property, if in obtaining possession of them for such particular purpose appellant feloniously intended to make use of such possession as the means of converting them to his own use, and did so convert

them, the act as declared by the rule stated in Commonwealth v. Williamson, *supra*, constituted grand larceny.

As the instructions of the court submitted to the jury, in substantially correct language, all the law of the case, no reason is perceived for sustaining any of the objections made to them by the third contention of appellant's counsel.

The same is true as to counsel's complaint of the evidence, for we have been unable to find that any of it was incompetent. In brief, the record furnishes no ground for disturbing the judgment, and it is affirmed. The whole court sitting.