STATE OF CONNECTICUT *v.* VINCENT COTS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 11—decided November 8, 1939.

*M. Eugene Culver*, public defender, *David A. Carlson*, and *Irwin Isaacs* of the New York bar, for the appellant (defendant).

*Bertrand E. Spencer*, state's attorney, for the appellee (the state).

BROWN, J. The indictment charged Ira Allen Weaver and this accused with murder in the first degree in having shot to death Joseph G. Dripps at Middletown on January 21, 1939, while engaged in the armed robbery of his store, the shooting having been done by Weaver, and Cots having aided and abetted the same. Upon Weaver's plea of guilty the court determined the degree of his crime to be murder in the first degree. Cots having pleaded not guilty, and so elected, was tried by the court, and was adjudged guilty of murder in the first degree as charged in the indictment. He has appealed from this judgment.

These facts material to the issues upon this appeal, summarized in part for the sake of brevity, are found by the court upon sufficient evidence. Cots and Weaver were co-employees of a traveling show from August 1, 1938, to sometime in September, 1938, and thereafter Weaver lived with Cots and his wife in a tenement in Middletown. From October 1, 1938, to

January 21, 1939, they did such odd jobs together as cutting wood and selling Christmas trees. Sometime before August 1, 1938, Weaver had purchased a twenty-two calibre automatic Colt Woodman's Target Pistol. In December, 1938, Weaver and Cots perpetrated an armed robbery of a store in Meriden in which this gun was used, and in which Cots aided and abetted by furnishing all the information as to the circumstances concerning the store, and by furnishing transportation to Weaver to Meriden in the Cots car. In January, prior to the twenty-first, Weaver broke and entered a store at Higganum, for which crime Cots drove him to Higganum, and later furnished transportation of the loot to Middletown.

On January 21, 1939, and for some time prior thereto Cots was the registered owner of a 1929 Auburn sedan which was used in the instant crime and those committed at Meriden and Higganum. In all instances it was operated by Cots, Weaver having neither an operator's license nor ability to operate that type of car. The gun with ammunition was commonly left with Edward Renca, and was used from time to time by him and both accused for target practice and shooting small game in the woods. On Thursday, January 19, 1939, Renca delivered the gun loaded with ten cartridges to Weaver at his request. The next day Weaver, Cots and Renca were in the woods, when the gun was displayed but not used. On January 21, 1939, Weaver and Cots were in financial straits, with payments due for room rent, on the car, and for groceries, and no income available.

On that evening of Saturday, January 21st, being unable to raise any money, Weaver and Cots decided to rob Fladd's store in Middletown, and drove to the vicinity of the store, having the gun with them. They had some talk that Cots was to rob this store. After

arriving in the vicinity Cots lost his nerve and would not undertake this robbery. Weaver thereupon took the gun to accomplish it but desisted because the storekeeper was a woman. They then abandoned this robbery. They thereupon agreed to hold up the store of Joseph G. Dripps and proceeded there with the gun between them on the front seat of the automobile.

Arriving in the vicinity of the Dripps store at about 9.30 in the evening, Cots parked the car on Russell Street, one hundred or two hundred yards from it. Weaver got out and proceeded in the direction of the store, taking the gun with him. Thereupon, using the gun as a means of intimidation, Weaver held up and robbed Dripps in his store and in the course of the robbery shot him through the stomach. As a result of the wound so inflicted Dripps died on January 24, 1939. After the robbery, Weaver returned to the car and told Cots that he had shot a man in the course of the hold-up. Cots thereupon drove the car, with lights extinguished, away from the scene of the crime to a point near Renca's store, where Weaver left the car, taking the gun with him. The gun remained concealed during that night and was returned to Renca by Cots. Medical Examiner Harvey operated on Dripps and removed from his body a twenty-two calibre long rifle bullet fired through this gun.

In unsworn statements made both on January 21st and 24th as to his whereabouts and doings on the evening of Saturday, January 21st, Cots admitted driving to the scene of the crime with Weaver and denied any further knowledge of it. He did not testify in his own behalf at the trial. On other occasions between the night of January 21st and the morning of January 23d, in unsworn statements to the police, both Cots and Weaver claimed they were both at home on Saturday evening, January 21st, after approximately 9 o'clock.

Both subsequently admitted these statements were false.

The robbery was accomplished under and pursuant to plans made by Weaver and Cots to commit it. Cots had knowledge that it was to be committed, and he drove Weaver there for that purpose, and he also knew that the gun was to be used for that purpose and that it was loaded. The court concluded that Cots was an accessory to the murder of Joseph G. Dripps and was guilty of murder in the first degree as charged in the indictment. Error is assigned in the court's refusal to find certain facts and in finding some of the subordinate facts and this conclusion without evidence. There is no need to consider the claimed corrections in the finding. The final assignment of error is the action of the court in finding upon all the evidence that the accused Cots is guilty of the crime charged beyond a reasonable doubt. The ultimate question is " 'whether on all the evidence the defendant is guilty beyond a reasonable doubt of the crime charged'." *State* v. *Frost,* 105 Conn. 326, 332, 135 Atl. 446; *State* v. *Guilfoyle,* 109 Conn. 124, 138, 145 Atl. 761; *State* v. *Simborski,* 120 Conn. 624, 626, 182 Atl. 221. Our discussion of this phase of the appeal is confined to this inquiry.

The accused Cots claims that the evidence is insufficient to support a finding that in whatever he did, he possessed that guilty knowledge which is essential to the conclusion that he is guilty as an accessory. While he expressly concedes that he "drove with Weaver to the scene of the shooting," he contends that he neither agreed to nor had any knowledge of the contemplated commission of any criminal act by Weaver. He further claims that the only evidence to support the court's finding that there was such an agreement and knowledge on his part is the testimony of Weaver and

that this upon this record is legally insufficient to sustain it. This testimony is attacked as entirely unworthy of belief because of the flat contradictions in other statements made by Weaver which appear in the record. This shows that Weaver, in re-enacting the crime on January 24th, told the police that Cots drove him to the vicinity of the Dripps store, waited while he went in and robbed and shot Dripps, and then drove him away, but that Cots had no knowledge at all that Weaver was going to commit the robbery or shooting. It also appears that in his statement to the police of March 6th, Weaver told the radically different story that Cots planned the crime, drove the car to the locus, and was the one who went into the store and did the shooting. At the trial, after pleading guilty to the indictment charging him with the actual shooting, Weaver testified that he and Cots agreed to rob Dripps, that the gun, as Cots knew, was loaded and on the seat of the car, and that Cots was the one who got out and robbed and shot Dripps.

Cots' contention comes down to this, that since the sole testimony of his guilty connection with the crime is that of Weaver, the version of the offense in Weaver's statement of January 24th, and that in his statement of March 6th and in his testimony, are so inconsistent and mutually exclusive that the court's conclusion that Weaver was guilty as principal and Cots as accessory cannot be sustained. Cots argues that this is necessarily so since if the former is accepted as true he is clearly innocent, while if the latter is accepted he can be guilty only as principal and Weaver as accessory. There are two fallacies in this argument. First, although it is true that Weaver's testimony is the only direct evidence of Cots' guilty knowledge, there is an abundance of indirect or circumstantial evidence which supports the court's con-

clusion. Second, the court could properly accept Weaver's testimony as true in part and reject the rest. Existence of agreement between Cots and Weaver to commit this robbery involving the consequent guilty knowledge of Cots implicit therein, was properly provable by circumstantial evidence, and it is the exceptional case where it can be proved otherwise. *State* v. *Parker,* 114 Conn. 354, 366, 158 Atl. 797. Evidence of this nature, independent of Weaver's testimony, and supporting the court's conclusion, included the following: Cots and Weaver had for months occupied the same two-room apartment and been intimate companions. Though they claimed to own the car together and used it for their common purposes, Cots only could operate it. Both were in debt and without funds at the time. After driving the car to the vicinity of the Dripps store, Cots parked it with the motor running and the lights extinguished while Weaver was gone for about ten minutes. Immediately upon his return Cots drove him away in the car with the lights out. After returning to their tenement Weaver handed five dollars to Mrs. Cots and told her to pay the room rent with it. The gun which fired the fatal shot was delivered fully loaded to Weaver by Renca two or three days before the crime and was returned by Cots with one shell missing on the day after. In addition to the evidence of these facts the court had before it the evidence of Cots' false statements and alibis. His failure to testify in his own behalf after the state had produced evidence of his guilty participation in this crime, and to show his guilty knowledge, the further evidence of the Meriden and Higganum robberies and of the abandoned attempt to rob the Fladd store, were also factors which the court was entitled to take into consideration. *State* v. *Guilfoyle,* 109 Conn. 124, 144, 145 Atl. 761. Cots' self-serving declarations in evidence

did not affect the applicability of this rule. Upon the whole record the court was amply warranted in concluding that the guilty knowledge essential to render Cots guilty as an accessory was established beyond a reasonable doubt.

That the state relied upon statements in evidence of Weaver, an accomplice, does not militate against our conclusion. Under the law of this state the trier may convict an accused upon the uncorroborated testimony of an accomplice, provided it believes the crime proved beyond a reasonable doubt by this evidence. *State* v. *Frost,* 105 Conn. 326, 334, 135 Atl. 446. A fortiori, the court can convict when such evidence is substantially corroborated by other evidence as here. It was also within the court's power to accept that part of Weaver's testimony which stated that Cots agreed to participate in the armed robbery of the Dripps store and knowingly drove Weaver there in the car for that purpose, and to reject the part stating that Cots and not Weaver entered the store to rob and did the shooting. *Meagher* v. *Colonial Homes Co.,* 109 Conn. 343, 347, 146 Atl. 609. The facts already recited corroborating the former, and the re-enactment of the offense by Weaver with a precision of detail hardly possible had not he himself actually done the shooting, together with the facts that the footprints of the robber in the snow leading to the store were made by the shoes which later Weaver was found to be wearing, contradicting the latter, gave the court sound reason to evaluate this evidence as it did. The court did not err in finding upon all the evidence that Cots was guilty beyond a reasonable doubt.

The second claim of the appellant is that the state has failed to establish his guilt by "the testimony of at least two witnesses, or that which is equivalent thereto," which § 6479 of the General Statutes requires

in every capital case. "All that the statute requires
... is that the proof of all the essential elements of the
capital crime charged (each of which must be proved
beyond a reasonable doubt) shall not depend upon the
testimony of one witness. If one or more witnesses
testify to facts relevant and sufficient to prove some of
the essential facts of the capital crime charged, and
another witness or witnesses testify to facts relevant
and sufficient to prove the remaining essential facts,
the jury may find that the statute has been satisfied."
*State* v. *Schutte*, 97 Conn. 462, 468, 117 Atl. 508. This
is conceded to be a correct statement of the rule, but
the gist of Cots' claim is that there is no essential ele-
ment or fact of the capital crime here charged of which
his guilty knowledge is not an integral part, and that
the only evidence of such knowledge is the testimony
of Weaver or of statements made by him, so that the
proof of all of the essential elements of the crime here
depends upon the testimony of this one witness, in
violation of the rule. This claim is predicated upon
two erroneous assumptions, first, that guilty knowledge
of Cots is a required part of every essential element or
fact, and second, that Weaver's testimony is the only
evidence thereof. The circumstantial evidence of Cots'
guilty knowledge to which we have referred shows that
the latter is unwarranted, and the decision in the
*Schutte* case makes clear that the former is also incor-
rect. Thus the trial court's charge in that case, which
this court approved, in explaining the meaning of the
rule, stated (page 466): "All it means in its require-
ment as to two witnesses, is that there shall be two
witnesses testifying to material and relevant circum-
stances or facts tending to show the guilt of the ac-
cused, . . . at least two witnesses or the equivalent
thereto, testifying to the same or different facts or cir-
cumstances material and relevant to show the guilt of

the accused." In that case as here, there was evidence of a number of such "facts or circumstances" of which guilty knowledge upon the part of the accused was no essential ingredient. Among these in the chain supporting the state's case here, shown by evidence exclusive of Weaver's testimony, are: the close companionship of Cots and Weaver, their financial distress at the time, Cots' own statement as related by a police officer, that Weaver on returning to the car said that he had shot a man in the course of the hold-up, followed by Cots' query, "What did you do that for," and the fact that it was a bullet fired by the Weaver gun that killed Dripps. The shooting by Weaver, and Cots' guilty knowledge were but two of the several essential elements or facts of the crime charged. Under the rule it was not necessary that there be two witnesses to either of these essentials, or to any other single essential involved in the offense. Whether the testimony in a capital case is equivalent to that of two witnesses is a question of fact for the trier which passes upon the weight of the testimony, reviewable only if the conclusion is one which could not reasonably be reached. *State* v. *Williams*, 90 Conn. 126, 129, 96 Atl. 370. The court did not err in concluding that the requirement of § 6479 was satisfied.

The appellant's final claim is that since he was convicted as accessory only and Weaver as the principal who did the fatal shooting in the course of the robbery, under §§ 6043 and 6562 of the General Statutes any conviction of him must be restricted to robbery instead of murder. Section 6043 provides: "All murder perpetrated . . . by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or committed in perpetrating or attempting to perpetrate, any arson, rape, robbery or burglary . . . shall be murder in the first degree." Section 6562 provides: "Any

person who shall assist, abet, counsel, cause, hire or command another to commit any offense may be prosecuted and punished as if he were the principal offender." Relying upon the familiar rule that penal statutes must be strictly construed (*State* v. *Levy*, 103 Conn. 138, 141, 130 Atl. 96), the appellant's claim is that in the absence of provision in either statute that an accessory to the other crimes mentioned in § 6043 can be punished for murder, conviction must be confined to the particular enumerated crime in which he participated. No authority is cited in support of this contention.

The answer to it depends rather upon the principles of the law of criminal conspiracy than of statutory construction. In so far as the guilt of Cots is concerned, the controlling question is not whether Weaver's malice and premeditation are imputable to him under the statutes, but rather whether the existence of the conspiracy for the original felony renders him responsible for the natural and probable results of the execution of that original felony. The universally accepted rule is: "All who join in a common design to commit an unlawful act, the natural and probable consequence of the execution of which involves the contingency of taking human life, are responsible for a homicide committed by one of them while acting in pursuance of, or in furtherance of, the common design." 29 C. J. 1073, and cases there cited; 13 R. C. L. 730; *State* v. *Klein*, 97 Conn. 321, 328, 332, 116 Atl. 596; *State* v. *Allen*, 47 Conn. 121, 138; *Conrad* v. *State*, 75 Ohio St. 52, 78 N. E. 957, and note, 6 L. R. A. (N. S.) 1154; Brill, Cyclopedia Criminal Law, §§ 260, 261; 1 Wharton, Criminal Law (12th Ed.) § 258. The evidence in this case showing a conspiracy by the two accused to use the loaded gun to commit this robbery, under circumstances indicating that as a natural and probable conse-

quence of carrying it out the contingency of taking human life would be involved, there being no abandonment by Cots claimed, brings it squarely within the above rule. The court did not err in refusing to confine its conviction of Cots to robbery.

There is no error.

In this opinion the other judges concurred.